## THE STATE ex rel. AUDRAIN COUNTY v. GEORGE E. HACKMANN, State Auditor.

In Banc, July 24, 1918.

1. **CONSTITUTIONAL LAW: Hospital Act: Purpose.** The Act of 1917 (Laws 1917, p. 145) authorizing counties to establish and maintain public hospitals, and to levy a tax and issue bonds therefor, has for its primary purpose, as shown by its terms, the providing for the construction of public county hospitals and the creation of a public debt for that purpose. The rate of taxes to be levied for the purpose of paying the debt was not the main purpose nor a vital element of the act.

2. ————: ————: **Rate to Pay Debt: Self-Enforcing.** That part of the Constitution requiring a municipality, when creating a debt beyond the income and revenue of the current year, to "provide for the collection of an annual tax sufficient to pay interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within twenty years," is self-enforcing, and is effective without legislative action.

3. ————: ————: ————: **Limited to Two Mills Tax.** So much of the County Hospital Act of 1917 as undertook to fix a maximum rate of two mills on the dollar-valuation of property as the tax to be levied to pay the bonds was a work of supererogation, since the Constitution itself requires "an annual tax sufficient" to pay the interest and principal of the debt within twenty years, which is as much a part of the act as if it had been written into it. If the rate of two mills on the dollar is sufficient then it is a valid rate; and if not sufficient, then the limitation to two mills is

harmless. because the constitutional requirement *proprio vigore* was substituted for it.

4. ———: ———: **Limitation of Tax Rate: Separate From Rest of Act.** Where some portions of a legislative act are invalid and, after they are separated from what is valid, a law in all respects complete and susceptible of constitutional enforcement is left, which the Legislature would have enacted had it known that the exscinded portions were invalid, the act will be upheld. It is apparent from the terms of the County Hospital Act of 1917 that the Legislature would have enacted it had it contained no provision limiting the rate of taxation to pay the bonds to two mills on the dollar; and disregarding all its provisions relating to the rate of taxation, since the Constitution itself supplies them, a valid and complete act remains.

5. ———: ———: **Anticipation of Revenue.** The County Hospital Act of 1917 was not enacted in pursuance of the powers or with reference to the objects specified in Section 11 of Article 10 of the Constitution, and hence it is not invalid as an attempt to authorize the issuance of bonds in anticipation of collection of increased rate of taxation.

MANDAMUS.

PEREMPTORY WRIT ISSUED.

*R. D. Rogers* and *Charles & Rutherford* of counsel for relator.

(1) A county hospital is a public building, and, therefore, the erection and maintenance of a county hospital is a public purpose. In re Board of Commissioners v. Peter, 253 Mo. 352. (2) Every presumption in favor of the validity and constitutionality of the Act of April 9, 1917, will be indulged by the courts, and the act will not be held to be unconstitutional unless it so plainly violates some provision of the Constitution that there is no escape from such conclusion. Board of Commissioners v. Peter, 253 Mo. 520. (3) Such a construction of a statute should be adopted as will save the statute and make it operative. State ex rel. v. Duncan, 265 Mo. 47. And as will give effect to the intent of the lawmakers. State ex rel. v. Duncan, 265 Mo. 26. (4) The main and essential purpose of the act is to authorize the different counties to proceed under the provisions of Section 12 of Article 10 of the Con-

stitution in the incurring of indebtedness by the voting of bonds to provide funds for a public purpose. (a) This section requires the levy and collection of taxes sufficient in amount to retire such an indebtedness within twenty years. A provision in the Hospital Act for a tax for twenty years, indicates, therefore, the legislative intention that the bonds are to be retired within the time required by the Constitution for a bonded indebtedness. (b) It would be absurd to assert that the tax provisions of the act constitute the main features, the essentials, of the act; because the tax is for a period of twenty years only. And this conclusively shows an intention on the part of the Legislature that the tax should be for the retirement of an indebtedness in twenty years, as provided in the Constitution; and not for the support of the hospital, for that would mean a cessation of the tax, and an abandonment of the whole hospital project, at the end of that period. (c) The form of ballot prescribed by the act indicates that the main purpose and subject of the act has reference to the incurring of debt. (d) That part of the ballot referring to a tax may even be disregarded; because any form of ballot giving the voter full knowledge of the issue involved, viz, the incurring of debt, is sufficient. Dick v. Scarborough, 73 S. C. 150; State ex rel. v. Stangyer, 197 S. W. (Mo.) 251; State ex inf. v. Clardy, 267 Mo. 384; Russell v. Croy, 164 Mo. 95. (5) Even assuming that certain portions of the Act of 1917 may appear to be invalid, this does not invalidate the whole act. Such invalid portions do not go to the essential features of the act. They may be elided, and a complete and workable statute will still remain, under the provisions of which the bond issue is valid. State ex rel. v. Gordon, 268 Mo. 713; Hislop v. Joplin, 250 Mo. 588; Home Telephone Co. v. Carthage, 235 Mo. 668. A part of a statute may be constitutional and a part unconstitutional; in which events, if the part which is unconstitutional can be eliminated without destroying the law, then it will be declared valid. State ex inf. v. Duncan, 265 Mo. 46; State ex rel. v. Gordon, 236 Mo. 170; Shively v. Lank-

ford, 174 Mo. 549; State ex rel. v. Field, 119 Mo. 612; State ex inf. v. Washburn, 167 Mo. 680. (6) Section 11 of Article 10 of the Constitution has no application. The essential purpose of the act, the incurring of indebtedness for the establishment of hospitals, is referable to Section 12 of Article 10 of the Constitution. (7) The provision of Section 12 of Article 10 of the Constitution requiring the levy of a tax to pay a debt incurred and interest thereon is self-executing. Evans v. McFarland, 186 Mo. 703; Black v. Early, 208 Mo. 281; State ex rel. v. Allen, 183 Mo. 292; 1 Dillon on Munic Corps. (5 Ed.), sec. 191, p. 342. (a) The tax provisions of the statute can add nothing to the Constitution; are mere surplusage; and may be disregarded. (b) No vote on the levy of a tax was necessary to make valid the bonds voted for a public hospital. Evans v. McFarland, 186 Mo. 726.

*Frank W. McAllister*, Attorney-General, *S. P. Howell*, Assistant Attorney-General, *Thomas J. Cole*, of counsel for respondent.

(1) It is the duty of respondent, as State Auditor, to determine whether there is authority of law for the issuance of the bonds; and if such exists, whether all the conditions of the statutes, applicable thereto, have been complied with in the particular issue presented for registration. Sec. 1275, R. S. 1909; State ex rel. Dexter v. Gordon, 251 Mo. 313, Thornburg v. School District, 175 Mo. 12; State ex rel. Pike County v. Gordon, 268 Mo. 326. (2) The Act of April 9, 1917, is violative of and in conflict with the first proviso contained in Section 11 of Article 10 of the Constitution. Laws 1917, 145; State ex rel. v. Wilder, 200 Mo. 105; Haussler v. St. Louis, 205 Mo. 690. Section 11 of Article 10 of the Constitution restricts the amount of tax rate, and then contains a proviso under the authority of which, upon meeting the conditions therein set out, and increased rate may be levied for the purpose designated, namely, the erection of public buildings; but it grants no authority to vote such increased rates for the support and maintenance

of such buildings. Black v. McGonigle, 103 Mo. 202; Barnard v. Knox Co., 105 Mo. 389; State ex rel. v. Columbia, 111 Mo. 379; Brooks v. Schultz, 178 Mo. 226. (3) The act in question is unconstitutional for the further reason that its terms specifically and directly violate and conflict with the provisions of Section 12 of Article 10 of the Constitution. Sec. 1, Laws 1917, p. 145; Black v. Early; 208 Mo. 312; State ex rel. v. Gordon, 217 Mo. 118; State ex rel. v. Allen, 183 Mo. 293; Evans v. McFarland, 186 Mo. 727; State ex rel. v. Walker, 193 Mo. 706. Whether or not a legislative enactment impinges upon a constitutional provision is to be determined, not by what has been done under it, but by what may under its authority be done. Sterrett v. Young, 82 Pac. 946; Board of Education v. Aldredge, 13 Okla, 205; Lumsden v. Milwaukee, 8 Wis. 485. (4) The said Hospital Act further violates the provisions of Section 11 of Article 10 of the Constitution, in that said section grants no authority for the issuance of bonds in anticipation of the collection of an increased rate of taxation beyond the rate allowed by said Section 11, although such increased rate may be authorized by two-thirds of the qualified voters of such county voting therefor. Secs. 1, 2, 4 and 6, Laws 1917, p. 145; Benton v. Scott, 168 Mo. 397; Lamar v. City of Lamar, 128 Mo. 216; Harris v. Bond Company, 244 Mo. 693.

BOND, C. J.—I. This is an orginal proceeding, seeking our writ of mandamus to compel respondent, George E. Hackmann, as Auditor of the States of Missouri, to register Bond No. 1 of an issue of $75,000 of bonds of Audrain County. Respondent waived the issuance of an alternative writ of mandamus and the case was submitted to the court upon the petition which stands as and for the writ and the return made thereto. The undisputed facts are as follows:

Statement.

In December, 1917, a petition, signed by more than one hundred resident freeholders of Audrain County, more than fifty of whom were non-residents of the city of Mexico, was filed in the county court of said county, in which the intention to erect and maintain a public hospital in the city of Mexico was stated and asking that an annual tax be levied for its establishment and maintenance, the sum of $75,000 being the maximun amount proposed to be expended therefor. The petition further asked the court to submit the question to the qualified voters of Audrain County at a special election, duly called for that purpose upon proper notice to said voters, limiting the rate of the tax to be levied to one-half mill on the dollar for a period not longer than twenty years, and also providing for the issue of bonds to advance said project.

Said special election, after due notice, was held on April 5, 1918, and the question whether said tax of one-half mill on the dollar should be levied on the taxable property of said county for the erection of said public hospital, was duly submitted and carried by a two-thirds vote of the qualified voters. Following said election, the county court ordered and directed that certain negotiable coupon bonds of said county, to be known as "public hospital bonds," be prepared, executed, and registered in the office of the State Auditor; that said bonds should bear the date of May 1, 1918, be seventy-five in number, $1000 each in denomination, and to mature serially $15,000 each year from 1923 to 1927, both inclusive, with interest at five per cent per annum, payable semi-annually.

The petition further states that afterwards, in compliance with said court order, "Public Hospital Bond No. One" of said Audrian County, maturing May 1, 1923, was duly executed and presented to respondent, George Hackmann, State Auditor, together with the proper regristration fee, who refused and still refuses to register said bond.

In his return respondent admitted every allegation of fact alleged in the petition and averred that there was passed by the 49th General Assembly of the State of Missouri an act (Laws 1917, page 145) to enable counties to establish and maintain public hospitals, levy a tax and issue bonds therefor, etc; that said act was approved April 9, 1917; that the bond relator seeks to have registered was authorized and executed in pursuance of a special election held under and by virtue of the provisions of said act; that respondent should not be required to register said bond because said act is in violation with the first proviso of Section 11 of Article 10 of the Constitution of Missouri which authorizes an increase of the rate of taxation for the purpose of erecting public buildings in counties when properly authorized, while the Act of 1917 purports to authorize the levy of an increased rate of taxation for the support and maintenance of public hospitals; that the Act of 1917 is also in violation of the second proviso of Section 12 of Article 10 of the Constitution in that, although said proviso makes it mandatory to provide for the collection of a tax sufficient to pay interest and provide a sinking fund for the retirement of the principal within twenty years, yet the 1917 enactment limits the rate of taxation proposed not to exceed two mills on the dollar of property valuation; that the 1917 act is in violation of Section 11 of Article 10 of the Constitution in that it attempts to authorize the issuance of bonds in anticipation of collection of increased rate of taxation, which is not authorized by and would conflict with said section of the Constitution.

II. A fair consideration of the terms and purposes of the act under review demonstrates that the Legislature intended the primary purpose of providing for the construction of public county hospitals and the creation of a public debt for that purpose. This design is manifested not only in the title to the act, but in each of the succeeding

Rate of Taxation.

sections and is inescapable when it is read and interpreted as a totality. [Laws 1917, page 145 et seq.] In considering the particular sections and provisions of the act, the paramount object of the Legislature to grant to the counties of the State the right to "establish a public hospital" and to incur an adequate indebtedness to carry out that purpose, must be constantly borne in mind. When this is done, it becomes at once apparent that the Legislature framed its enactment under the authority of that provision of the Constitution restricting the power of counties and other sub-divisions of the State from becoming indebted beyond the income and revenue of the current year "without the assent of two-thirds of the voters thereof voting at an election to be held for that purpose; . . . *and provided further,* that any county, . . . incurring any indebtedness requiring the assent of the voters as aforesaid, shall, before or at the time of doing so, provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within twenty years from the time of contracting the same." [Constitution of 1875, Art. 10, Sec. 12.]

It is the established law in this State, that the clause above quoted relating to a provision for the payment of the interest and principal of such indebtedness is a self-enforcing edict of the Constitution not requiring for its effectiveness any legislative action whatever. [Evans v. McFarland, 186 Mo. l. c. 727; Black v. Early, 208 Mo. 281; State ex rel. v. Allen, 183 Mo. l. c. 292; Dillon On Municipal Corporations (5 Ed.), sec. 191, 342; East St. Louis v. Amy, 120 U. S. 600.] In the latter case, the doctrine governing such a constitutional provision, is thus expressed:

"This provision for the tax was written by the Constitution into every law passed thereafter by the Legislature allowing a debt to be incurred; and, in our opinion, it took the place in existing laws of all provisions for taxation to pay debts thereafter incurred

under old authority which were inconsistent with its requirements. It was made by the people a part of the fundamental law of the State that every debt incurred thereafter by a municipal corporation, under the authority of law, should carry with it the constitutional obligation of the municipality to levy and collect all the necessary taxes required for its payment.''

That the constitutional provision (Sec. 12, Art. 10) under which the act under review was framed, is the *one* which specifically provides for the creation of county indebtedness beyond its annual income and revenue for any year, was directly adjudged in a case where its scope and purpose were distinguished from that of Section 11 of Article 10 of the Constitution. [Lamar v. City of Lamar, 128 Mo. l. c. 216.] It necessarily follows, that so much of the act under review, as undertook to fix a maximum rate of two mills for the taxation therein prescribed was a work of supererogation, since the constitutional requirement that the county should provide an ''annual tax sufficient'' to pay the interest and principal of indebtedness was as much a part of the act under review as if it had been set out therein in so many words. If the specfic limitation of two mills on the dollar, contained in the act, is ''sufficient,'' then it would be a valid rate to be fixed by the county. If not, it was a harmless provision since the Constitution *proprio vigore* was substituted therefor.

We therefore overrule the contention of respondent that the insertion of a fixed rate in the legislative act, violated any provision of the Constitution of this State.

III. It also necessarily follows, that the inclusion within the act under review of a provision limiting the rate of taxation to two mills on the dollar, Separable Invalid Provisions. was not an interdependent portion of the entire act providing for the establishment of a public hospital and the incurring of an indebtedness to that end, and, hence, if it should turn out that a higher rate of taxation is necessary to accomplish the objects and purposes of the act, that would

constitute no valid reason why a *mistake* on the part of the Legislature, as to the proper rate of taxation, or proper means of enforcing and carrying out their purpose to provide for public hospitals in the counties of the State, should be held to destroy an entire act which is otherwise susceptible of being effectuated under the substitutional clause of the Constitution. [State ex rel. v. Taylor, 224 Mo. l. c. 474.]

The test of the right to uphold a law, some portions of which may be invalid, is whether or not in so doing, after separating that which is invalid, a law in all respects complete and susceptible of constitutional enforcement is left, which the Legislature would have enacted if it had known that the exscinded portions were invalid. [State ex inf. v. Duncan, 265 Mo. l. c. 45.] There is no room for doubt in the present case, that the Legislature, in the exercise of the power devolved upon it under Section 12 of Article 10 of the Constitution, would have enacted a law for incurring an indebtedness to carry out its design of enabling counties of the State to build and maintain public hospitals, irrespective as to the sufficiency of two mills on the dollar to furnish sufficient revenue for the indebtedness thereby incurred. And it would necessarily thwart this purpose on the part of the law-making body to hold, as insisted by respondent, that the act in question would not have been framed except for the purpose of limiting the rate of taxation to the amount therein prescribed.

Our conclusion is that, disregarding any and all provisions in the act in review relating to the limit of taxation, an independent enactment, valid and complete, remains, the means of enforcing which was completed by the Legislature itself.

IV. From what has been said, we are unable to concur in the view that the act in question is in contravention of Section 11 of Article 10 of the Constitution of the State. It was not enacted by the Legislature in pursuance of the powers or with reference to the objects specified in that section, as has been shown. Our con-

clusion is that the writ in this case should be made peremptory.

It is so ordered. All concur except *Faris, J.*, absent.