16779

LEE v. CLARK *ET AL.*

(77 S. E. (2d) 485)

*Messrs. Leppard & Leppard,* of Chesterfield, *for Appellants,*

*Messrs. Samuel Want, Sam Rogol,* and *Leroy M. Want,* of Darlington, *for Respondent,*

*Messrs. Leppard & Leppard,* of Chesterfield, *for Appellants, in Reply,* ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Sept. 10, 1953.

OXNER, Justice.

This action was brought for the purpose of obtaining an adjudication as to the constitutionality of Act No. 856 of the 1952 Acts of the General Assembly, 47 St. at L. 2111. It is here on appeal from an order overruling a demurrer to the complaint and holding that the challenged legislation is unconstitutional.

The Act, omitting portions not pertinent to this controversy, is as follows:

"Whenever two or more school districts of Chesterfield County are consolidated into a single district by resolution of the county board of education, the county board shall appoint a board of trustees of nine members for the consolidated district; provided, however, that the term of office of said trustees shall cease and determine on the 31st day of December subsequent to the next general election after their appointment by the County Board of Education of Chesterfield County; and, provided, further, that the trustees of such consolidated public school districts of Chesterfield County shall be elected by the resident qualified electors of each of said consolidated public school districts, respectively, in the General Election held next after the consolidation and creation of said Consolidated Public School Districts. Said

school district trustees shall be resident qualified electors of the school districts, respectively which they are to serve as trustees. Not less than three of said consolidated school district trustees in each of said school districts, shall be women electors. In the election of said trustees for said school districts, the three women candidates, in each of said school districts, receiving the largest number of votes cast for the women candidates, shall be declared duly elected trustees of each of said school districts, respectively, and the six other candidates, in each of said school districts, who shall receive the highest number of votes cast in said school district elections, whether men or women electors, shall be declared duly elected; provided, however, if there are less than three women electors, who are candidates in any of said school district elections, that the women receiving the highest number of votes cast for the women candidates, in any school district, shall be declared duly elected as trustees of the particular school district; and, provided further, that if there are no women candidates in any of said school district elections, that the nine candidates receiving the highest number of votes, cast in said elections, in each of said school districts, respectively, shall be declared duly elected as the trustees of their respective school districts. The term of office of the trustees elected under the provisions of this act shall commence on the 1st day of January next after their election and continue for a term of two years and until their successors in office have duly qualified. * * *''

In accordance with the terms of the foregoing Act, at the general election held in the fall of 1952, appellants, six men and three women, were duly elected trustees of a consolidated school district in Chesterfield County known as District No. 3. In January, 1953, respondent, a qualified elector and taxpayer in said district and a patron of the schools therein, brought this action seeking an adjudication that the 1952 statute is unconstitutional, and asking that the election of appellants as trustees thereunder be declared null and void. The constitutionality of this legislation is assailed on

numerous grounds, but the principal questions raised are that the Act denies the equal right given to every qualified elector by Article I, Section 10 of the Constitution "to elect officers and to be elected to fill public office"; that it violates that portion of Article II, Section 2, which provides that "every qualified elector shall be eligible to any office to be voted for, unless disqualified by age, as prescribed in this Constitution"; and that it denies the equality of rights and privileges guaranteed by the Constitution, in that it discriminates against men and gives a preference to women in the election of school trustees.

The first question raised by the demurrer is that respondent has not the requisite interest to question the validity of the Act. This action is brought under the provisions of the Uniform Declaratory Judgments Act, Volume I, Code of 1952, Title 10, Chapter 24, by the express terms of which, Section 10-2003 of the 1952 Code, the determination of the constitutionality of a statute is a proper subject of judicial decision by declaratory judgment. The propriety of such a proceeding has been consistently recognized. But any such action must be brought by a person having a substantial interest in the subject matter of the litigation and to establish such an interest, he must show that he will be directly affected by the enforcement of the statute questioned. We think respondent has such interest. He asserts the invasion of his political rights. On page 562 of an annotation in 174 A. L. R., it is stated: "An individual whose civil or political rights are directly affected by a statute may have the necessary interest to challenge the validity of the statute by a declaratory judgment proceeding." Respondent also has an interest in the controversy in his capacities as a taxpayer of the district and a patron of the schools therein. The trustees are charged with certain duties with reference to the general management and conduct of the schools in this district, including the selection of teachers and the determination of the fiscal policies. Respondent has a right to ask that the school affairs be managed by a law-

fully constituted body of trustees. In fact, the public interest requires that the validity of this Act be promptly determined.

Appellants next contend that under Section 10-2256 of the 1952 Code, an action of this kind must either be brought by the Attorney General in the name of the State, or by a private party on leave granted by a circuit judge. We do not think this section is applicable here. Where under the Uniform Declaratory Judgments Act an adjudication is sought as to the constitutionality of a statute, it is only required that the Attorney General be served with a copy of the proceedings and given a right to be heard. Section 10-2008 of the Code of 1952. This has been done. A certificate has been filed by the Attorney General stating that prior to the institution of this suit, he was requested to give an opinion as to the constitutionality of this Act but due to lack of available precedent on which to base an opinion, he advised that the question be submitted to the courts for a decision. He further stated that he had received copies of the pleadings but that since all parties were represented by able counsel, he had concluded not to participate in the hearing. In effect, the Attorney General has joined in the request for an adjudication as to the constitutionality of this Act.

Having disposed of the preliminary questions, we now turn to the merits of the controversy. The Act provides for a board of nine trustees, not less than three of whom shall be women, to be elected by the qualified voters of the consolidated district. There then follows the novel provision that "the three women candidates, in each of said school districts, receiving *the largest number of votes cast for the women candidates,* shall be declared duly elected trustees of each of said school districts, respectively, and the six other candidates, in each of said school districts, who shall receive the *highest number of votes cast in said school district* elections, whether men or women electors, shall be declared duly elected; provided, however, if there are less than three

women electors, who are candidates in any of said school district elections, that the *women receiving the highest number of votes cast* for the women candidates, in any school district, shall be declared duly elected as trustees of the particular school district". (Italics ours.)

It will be noted that in order for a man to be elected trustee, he must be among the six receiving the highest number of votes cast, while a woman need only receive the largest number of votes cast for the women candidates. This permits a woman to be elected even though she receives only a negligible portion of the votes cast at said election. It clearly appears that preferential treatment is given to women candidates. May the Legislature thus discriminate against men?

The first question for determination is whether the Legislature may in addition to the constitutional mandate that a public officer be a qualified elector, require other conditions for eligibility with respect to the office of school trustee. The Court below held that this could not be done. It was concluded that under Article I, Section 10, and Article II, Section 2, of the Constitution, all qualified electors, whether men or women, are equally eligible to hold the office of school trustee; and that the Legislature was without authority to add a qualification that a certain proportion of a board of trustees shall be women. We held in *McLure v. McElroy,* 211 S. C. 106, 44 S. E. (2d) 101, that the foregoing sections of the Constitution applied only to those offices created by that instrument. This suggests the interesting question of whether a school trustee is a constitutional officer. Article XI, Section 6, of the Constitution provides that "not less than three trustees for each school district shall be selected from the qualified voters and taxpayers therein, in such manner and for such terms as the General Assembly may determine". The statement was made in *Walpole v. Wall, County Superintendent of Education,* 153 S. C. 106, 149 S. E. 760, 764, that "school trustees are legislative, not constitutional, officers". It is not entirely

clear whether the Court intended to confine this statement solely to high school trustees. However, the question as to whether the trustees of *common* school districts are constitutional officers need not now be decided. Assuming that they are, we think the Legislature was empowered by Article XI, Section 3 of the Constitution to prescribe reasonable qualifications. Section 1 of this Article provides for a State Superintendent of Education; a State Board of Education is created by Section 2; then follows Section 3, which is as follows: "The General Assembly shall make provision for the election or appointment of all other necessary school officers, and shall define their *qualifications,* powers, duties, compensation and terms of office." (Italics ours.) As stated in *Gaud v. Walker,* 214 S. C. 451, 53 S. E. (2d) 316, 327, "all sections of the Constitution must be considered together and harmonized, if possible." We think it is clear that notwithstanding the provisions of Article II, Section 2, and Article I, Section 10, of the Constitution that every qualified elector shall be eligible for public office, it was intended by Article XI, Section 3, that the General Assembly should be vested with the power to prescribe other qualifications for the office of school trustee.

 · The fact, however, that the .Legislature may fix qualifications for holding the office of school trustee and that not every qualified elector may claim the unqualified right to hold said office, does not mean that in the fixing of such qualifications, the Legislature is not bound by the equal privileges and immunities clause of the Constitution. "The qualifications fixed may not be arbitrary, they must be reasonable and based upon substantial grounds which are natural and inherent in the subject matter of the legislation and the rights shall belong equally to each member of the class created by such qualifications." *State ex rel. Buttz v. Marion Circuit Court,* 225 Ind. 7, 72 N. E. (2d) 225, 230, 170 A. L. R. 187. We pointed out in *McLure v. McElroy, supra,* that any additional qualifications must be reasonable in their requirements. In that case we upheld a statute requir-

ing that three of seven members of the governing board of a hospital should be practicing physicians. It was found that the requirement bore a rational relationship to the duties of the office.

Is there any reasonable basis for the preferential ▮ status given women at an election held under this Act? In justification thereof, appellants state in their brief that women "generally are unwilling to undergo the physical strain and stress involved in a political campaign for election to public office"; that they "abhor the public speaking, personal campaigning, competitive tactics, and the rough and turbulent excitement of a political campaign"; and that there "is still considerable latent prejudice against women holding public office." It is said that all of this "generally results in a woman candidate beginning with a handicap, and being faced with an uphill fight." Our attention is called to the fact that comparatively few women have been elected to public office in South Carolina.

We are not to be understood as subscribing to the correctness of all of the foregoing statements, or as agreeing that women are handicapped to the extent claimed in running for public office. Be that as it may, however, the circumstances mentioned furnish no justification for the special consideration given women at an election held under this legislation. No one would seriously contend that a preference may be given to a male candidate for public office because, owing to a physical, educational or other handicap, he cannot compete on an equal basis with the ordinary candidate for public office. But is not the principle the same?

The general right of women to hold public office under the common law of England was not recognized. 42 Am. Jur., Public Officers, Section 52. Most public offices were closed to them. For a long period of time in this country, they were denied both the right to vote and, with a few exceptions, the right to hold public office. In some states, including ours, they are still disqualified from serving as jurors. However, since the adoption of the Nineteenth

Amendment to the Constitution of the United States, prohibiting the denial or abridgment of the right of citizens to vote on account of sex, women are eligible to hold most public offices. The discrimination against them by reason of sex has largely been removed. It is proposed now to go beyond equality between the sexes and enlarge the rights of women by giving them a preferential status in running for the office of school trustee. We do not think this can be done.

But it is argued that the statute creates a limitation on the number of male trustees and not a qualification for office. It is said that the purpose of this legislation is only to assure that not less than three members of the board of trustees shall be women. There are cases to the effect that a person's right to be regarded as eligible to hold public office is not infringed upon by legislation which prohibits the taking of more than a certain number of the class to which he belongs for the purpose of filling a commission composed of more than one individual. There, of course, must be a reasonable basis for such proportionate representation. It is stated in these cases that the Legislature has a right to make a commission or other public body more representative of different and diverse interests than might otherwise be the case. Under this principle, in *Rogers v. Common Council of the City of Buffalo,* 123 N. Y. 173, 25 N. E. 274, 277, 9 L. R. A. 579, it was held that "legislation which creates a board of commissioners consisting of two or more persons, and which provides that not more than a certain proportion of the whole number of commissioners shall be taken from one party, does not, in any just sense, amount to an arbitrary exclusion from office, nor to a general regulation requiring qualifications not mentioned in the constitution." In that case, the commission was appointed and not elected.

Assuming the correctness of the principles enunciated in the line of cases mentioned relating to proportionate representation on boards or commissions, they do not control the question before us. The purpose of the challenged Act is not

simply to obtain the composite judgment of men and women with respect to school problems. There is no limitation on the number of women who may be elected. As to six places on the board, men and women compete on an equal footing, thus making it possible ·to have a board composed of all women. Whether an act could be sustained which merely provides for a board of trustees or other public body consisting of a fixed number of each sex need not now be decided. This important and far-reaching question we leave open. The Act here goes much farther than requiring that a certain proportion of the board shall be women. It gives them a preferential status at the polls. The precise question presented is whether in respect to the required votes for election, there may be a distinction. We think not. If by reason of their sex, women are, as argued by appellants, more intimately acquainted with the operation of the public schools and have a closer relation with the teachers and administrative problems, these are considerations which the voter may take into account in casting his ballot, but afford no justification for discrimination against male candidates for school trustee.

Finally, it is contended that the portion of the Act which we have held to be unconstitutional is separable and that which remains is complete in itself and should be sustained. It is argued that the primary purpose of the Act was to create a board of trustees of nine members in lieu of a board of five members as provided by the general law, and to provide for their election by the qualified voters of the school district, and that the requirement that there would be three women on the board was a secondary consideration. "The rule is that where a part of a statute is unconstitutional, if such part is so connected with the other parts as that they mutually depend upon each other as conditions and considerations for each other, so as to warrant the belief that the Legislature intended them as a whole, and if they cannot be carried into effect, the legislature would not have passed the residue independently of that which is

void, the whole act is void. On the other hand, where a part of the statute is unconstitutional, and that which remains is complete in itself, capable of being executed, wholly independent of that which is rejected, and is of such a character as that it may fairly be presumed that the Legislature would have passed it independent of that which is in conflict with the Constitution, then the courts will reject that which is void and enforce the remainder." *Townsend v. Richland County,* 190 S. C. 270, 2 S. E. (2d) 777, 781.

We do not think under the foregoing test that the unconstitutional part is separable. To sustain appellants' contention would be tantamount to materially amending the Act which, of course, we are not at liberty to do.

There are several other questions raised by the exceptions, which were presumably abandoned since they are not mentioned in the brief. We may add, however, that these exceptions are clearly without merit.

In conclusion, it should be stated that the appellants who are women received not only a majority of the votes cast for women but the majority of all votes cast in said election. But this fortuitous circumstance has no bearing on the validity of the Act under which they were elected.

Affirmed.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.