STATE of Missouri ex rel. William F. ENRIGHT, Jr., et al., Relators,

v.

The Honorable Frank D. CONNETT, Jr., Judge of the Circuit Court of Buchanan County, at St. Joseph, Missouri, Division No. 3, Respondent.

No. 56737.

Supreme Court of Missouri, En Banc.

Jan. 10, 1972.

Franklin T. Thackery, Utz, Litvak, Thackery, Utz & Taylor, St. Joseph, for relators.

G. Raymond, Speckman, Lawrence V. Fisher, Plattsburg, for respondent.

FINCH, Chief Justice.

This case, written on reassignment, is an original proceeding in prohibition. Relators seek to prohibit respondent judge from enforcing his peremptory writ of mandamus wherein he ordered an at large election in a junior college district to elect two trustees, who, according to the writ of mandamus, were required to be residents of what we shall refer to as the rural component district. We must decide herein whether, in so doing, respondent exceeded his jurisdiction and authority, but we also must rule on the underlying question of whether that portion of the Junior College District Act (§§ 178.770–178.890, V.A.M.S.) held unconstitutional in Hadley v. Junior College District, 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45, is separable from the remainder of the Act so as to leave standing a complete and enforceable statute. We conclude that the portion of the statute held unconstitutional is separable and that respondent judge did exceed his jurisdiction and authority. Accordingly, our provisional rule in prohibition should be made absolute.

In 1961 the General Assembly enacted the Junior College District Act, referred to

above. It authorized the formation of junior college districts in Missouri, and in § 178.820 specified how and whence trustees were to be elected.[1] As will be noted, this section commences with the provision that six trustees shall be elected at large. This direction is followed by provisos which state that if the junior college district contains a school district (or districts) wherein certain specified percentages of the total school enumeration are located, the trustees are to be elected from specified component districts rather than at large. The section also provides that "Candidates for the office of trustee shall be citizens of the United States, at least thirty years of age who have been resident taxpayers of the proposed district for at least one whole year preceding the election," but then goes on to provide additionally that if trustees are to be elected other than at large, they must be resident taxpayers of the election district in which they are to run.[2]

In 1965 the Missouri Western Junior College District was formed. It included the St. Joseph School District plus certain additional outlying areas. The St. Joseph School District contained approximately eighty per cent of the total school enumeration in the proposed Junior College District, and consequently, pursuant to § 178.-820, four trustees were elected from the St. Joseph School District and the two remaining trustees were elected from the remainder of the district, which we refer to as the rural component district. It was determined by lot that the trustees elected from the St. Joseph School District should serve terms of two and four years, respectively, and that William W. Schneider and John W. Newhart, the trustees elected from the rural component district, should serve

---

1. The complete text of § 178.820 is as follows:

"1. In the organization election six trustees shall be elected at large, except that if there are in the proposed junior college district one or more school districts with more than thirty-three and one-third per cent and not more than fifty per cent of the total school enumeration of the proposed district, as determined by the last school enumeration, then each such district shall elect two trustees and the remaining trustees shall be elected at large from the remainder of the proposed district. If any school district has more than fifty per cent and not more than sixty-six and two-thirds per cent of the total school enumeration of the proposed district then three trustees shall be elected at large from such school district and three trustees at large from the remainder of the proposed district. If any school district has more than sixty-six and two-thirds per cent of the total school enumeration of the proposed district then four trustees shall be elected at large from such school district and two trustees elected at large from the remainder of the proposed district. If the trustees are elected at large throughout the entire proposed district, the two receiving the greatest number of votes shall be elected for terms of six years each, the two receiving the next greatest number of votes, for terms of four years each, the two receiving the next greatest number of votes, for terms of two years each. If the trustees are elected in any manner other than at large throughout the entire proposed district, then the trustees elected shall determine by lot the two who shall serve for six years, the two who shall serve for four years and the two who shall serve for two years. The period of time between the date of the organization election and the date of the first regular election of the junior college district is considered a full two years in the terms of the directors. Thereafter, all trustees elected shall serve for terms of six years each.

"2. Candidates for the office of trustee shall be citizens of the United States, at least thirty years of age who have been resident taxpayers of the proposed district for at least one whole year preceding the election and if trustees are elected other than at large they shall be resident taxpayers of those election districts for at least one whole year next preceding the election. All candidates for the first board of a district shall file their declarations of candidacy with the state board of education at least thirty days prior to the date of the organization election."

2. Section 178.840 contains provisions governing elections subsequent to the organization election, but it did not change the plan established by § 178.820 wherein elections would be at large or in some circumstances by component districts.

six year terms. Thus, their terms ran from 1965 to 1971, at which time they filed declarations of intent to be candidates to succeed themselves as trustees from the rural component district.

Meanwhile, on February 24, 1970, in Hadley v. Junior College District, supra, the Supreme Court of the United States, in a case involving the election of trustees in a junior college district in the Kansas City area, considered whether the component district plan in the Missouri Junior College Act violated the so-called "one man, one vote" principal. In ruling upon that question, the Supreme Court said of § 178.-820 as follows, 397 U.S. 1. c. 56, 90 S.Ct. 1. c. 795:

"Although the statutory scheme reflects to some extent a principle of equal voting power, it does so in a way that does not comport with constitutional requirements. This is so because the Act necessarily results in a systematic discrimination against voters in the more populous school districts. This discrimination occurs because whenever a large district's percentage of the total enumeration falls within a certain percentage range it is always allocated the number of trustees corresponding to the bottom of that range. Unless a particular large district has exactly $33\frac{1}{3}\%$, 50% or $66\frac{2}{3}\%$ of the total enumeration it will always have proportionally fewer trustees than the small districts. As has been pointed out, in the case of the Kansas City School District approximately 60% of the total enumeration entitles that district to only 50% of the trustees. Thus while voters in large school districts may frequently have less effective voting power than residents of small districts, they can never have more. Such built-in discrimination against voters in large districts cannot be sustained as a sufficient compliance with

the constitutional mandate that each person's vote count as much as another's, as far as practicable. Consequently Missouri cannot allocate the junior college trustees according to the statutory formula employed in this case."

On March 5, 1971, Schneider and Newhart filed their declarations as candidates to succeed themselves as trustees from the rural component district. A dispute arose as to whether an election should be held in 1971 or 1972 [3] and the board did not order such election. As a result, Schneider and Newhart on March 12, 1971, filed in the Circuit Court of Buchanan County a petition for writ of mandamus requesting that an election be ordered in the rural component district.

The Circuit Court issued its alternative writ of mandamus ordering an election in the rural component district and publication for such election was started. Thereafter, after a hearing, but without any amendment of the petition for writ of mandamus by Schneider and Newhart, the respondent judge issued his peremptory writ of mandamus ordering an at large election in the entire junior college district but directing that the two trustees to be elected must be residents of the rural component district. Respondent in his Findings and Conclusions recognized that under Hadley he could not order an election in the rural component district as he had sought to do in his alternative writ of mandamus. However, citing and relying on Dusch v. Davis, 387 U.S. 112, 87 S.Ct. 1554, 18 L.Ed.2d 656, respondent directed that candidates in the election must be residents of the rural component district.

Relators thereupon filed their petition for writ of prohibition and on March 31, 1971, our provisional rule in prohibition was ordered to issue.

---

3. Although the terms of the original trustees elected in 1965 for two and four year terms normally would have expired in 1967 and 1969, § 178.840 provided that such elections would not be held solely to elect trustees. Hence, where the district has no regularly scheduled election in that year (as the St. Joseph district did not), the election is postponed until the following year. Consequently, the elections were held in 1968 and 1970 and some of the board members contended that this election should be in 1972 rather than 1971.

The first question for determination is whether that part of the Act held unconstitutional in Hadley is severable from the rest of the Act, or whether the decision in Hadley necessarily means that the entire Act must fall.

■ The general rule applicable in Missouri was stated in State ex rel. Audrain County v. Hackmann, 275 Mo. 534, 205 S.W. 12, 14, as follows:

"The test of the right to uphold a law, some portions of which may be invalid, is whether or not in do doing, after separating that which is invalid, a law in all respects complete and susceptible of constitutional enforcement is left, which the Legislature would have enacted if it had known that the exscinded portions were invalid."

The Hackmann case involved a question of whether an act to enable counties to establish and maintain public hospitals, levy a tax and issue bonds therefor violated Art. 10, § 12 of the Constitution of 1875. The constitutional provision authorized an increase of the rate of taxation for the purpose of erecting public buildings in counties, but made it mandatory to provide for the collection of a tax sufficient to pay interest and provide a sinking fund for the retirement of principal within twenty years. The Hospital Act contained a provision limiting the rate of taxation to retire indebtedness at an amount not to exceed two mills on the dollar of property valuation in the county. This court held that insofar as the act purported to limit the maximum rate of taxation, it was inoperative to the extent that a county had to assess a higher rate to extinguish indebtedness within constitutional time limits. It concluded, however, that the mill limitation provision " * * * was not an interdependent portion of the entire act providing for the establishment of a public hospital and the incurring of an indebtedness to that end * * *" (205 S.W. 1. c. 13), relying upon the constructional rule above stated.

Another case involving application of this principle was State ex rel. Harvey v. Wright, 251 Mo. 325, 158 S.W. 823. There, the circuit attorney of the City of St. Louis brought a quo warranto action against Wright to try the title by which the latter held office as a member of the board of election commissioners of the city. Wright was a member of the Progressive Party. The statute which conferred authority upon the Governor to appoint such commissioners provided in part: "Two of said election commissioners * * * shall be members of the leading party politically opposed to that to which the Governor belongs, and shall be chosen from six eligible citizens named by the state committee of the said leading party politically opposed to that to which the Governor belongs and the other two members of said board shall be selected from six eligible citizens named by the state committee of the political party to which the Governor belongs." Plaintiff contended that since the Progressive Party was not "the leading party politically opposed" to that of the Governor, Wright held office in violation of the statute. An earlier decision had held unconstitutional that part of a predecessor statute which conferred upon the committee of a political party the privilege of suggesting eligible persons for appointment. Wright, inter alia, contended that the admitted invalidity of that clause invalidated the entire act. In rejecting that contention and holding the statute severable, the court said in part (158 S.W. 1. c. 826):

"We need not cite numerous cases from other jurisdictions or load down this opinion from text-book excerpts in order to prove that part, a section, a sentence, or a clause of a statute may be constitutionally invalid and the remainder good. We may merely say that this is a rule wholly or well-nigh universal in all common-law jurisdictions, and one to which this court has lent its concurrence. Valliant, J., in the case of State [ex inf. Hadley] v. Washburn, 167 Mo. 680, loc. cit. 697, 67 S.W. 592, 596, 90 Am.St.Rep. 430, said: 'The point is advanced that if the act of 1899

is unconstitutional in the particular named, the whole act is void, and the incumbent has no title to the office. The power attempted to be conferred on the partisan committee is not an essential element in the whole act. Where the part of an act that is unconstitutional does not enter into the life of the act itself, and is not essential to its being, it may be disregarded, and the rest remain in force; that is this case.'

\* \* \* \* \* \*

"We cannot state the rule better or more briefly. We might state it in different language by saying that if, after cutting out and throwing away the bad parts of a statute, enough remains which is good to clearly show the legislative intent, and to furnish sufficient details of a working plan by which that intention may be made effectual, then we ought not, as a matter of law, to declare the whole statute bad. Cooley on Con.Lim. (7th Ed.) 247; State ex rel. [Tolerton] v. Gordon, 236 Mo. [142], loc. cit. 171, 139 S.W. 403; State ex rel. [Applegate] v. Taylor, 224 Mo. [393] loc.cit. 474, 123 S.W. 892; State v. Bockstruck, 136 Mo. 335, 38 S.W. 317."

■ The trial court found that the remainder of the Act after excising that part invalidated in Hadley was severable and valid. We agree. Applying the principles enunciated in the Hackmann and Wright cases, we hold that after eliminating the alternate system for electing trustees from component districts under certain circumstances, "enough remains which is good to clearly show the legislative intent, and to furnish sufficient details of a working plan by which that intention may be made effec-

tual \* \* \*." State ex rel. Harvey v. Wright, supra 158 S.W. l.c. 826. The basic plan provided in the Junior College District Act is for at large election of trustees among persons residing anywhere in the district. That remains after deleting the alternative provisions which the General Assembly inserted to apply under certain specified circumstances. If we delete the part of the Act invalidated by Hadley, we still have an Act authorizing the creation of junior college districts with trustees to be elected at large among candidates residing anywhere in the district. They have exactly the same powers and authority to operate the district which trustees would have had if Hadley had not invalidated the component district provisions. The only change from the plan as enacted is that the alternative component district plan for electing trustees from within the borders of those districts is eliminated. We conclude that this is a complete, enforceable Act which the General Assembly would have enacted even if it had known that the alternative component plan would be invalidated in Hadley.[4] Under the Act as it now stands, at large elections among candidates residing anywhere in the district should be held.

■ Respondent's order directed an at large election among candidates who were required to live in the rural component district. There is no statutory authorization for such an election. The statute created two types of election. First, it provided for an at large election among candidates residing anywhere in the district. The alternative provision was for elections by component districts among residents of such districts. The latter has been invali-

4. While it is unnecessary to rely thereon, it is of some significance that on March 5, 1970, after the Supreme Court of the United States had announced its decision in Hadley, this Court on remand in Hadley v. Junior College District of Metropolitan Kansas City, Mo., 460 S.W.2d 1, called to the attention of the General Assembly the fact that said alternative provisions of the Act had been invalidated and that consideration should be given to amending the statute. Since that time,

no change has been made although the General Assembly has been in session. This is some indication of an intention on the part of the General Assembly that such elections hereafter may be held at large among candidates resident anywhere in the district, the first and primary method specified in the Act. Certainly, if the General Assembly had intended the invalidated part not to be separable, it would have acted rather than to allow the entire Act to fall.

dated, but the former still stands. Respondent had no authority to take part of one and part of the other and direct an election which the General Assembly had not established. Hence, respondent exceeded his authority and jurisdiction in ordering the election which he did mandate. The case of Dusch v. Davis, supra, relied on by respondent, merely stands for the proposition that the Supreme Court of the United States held therein that such a plan would not violate the "one man, one vote" principle. It is not authority for directing such an election in this case in lieu of the type of election established by the General Assembly.

Accordingly, we make our provisional rule in prohibition absolute.

SEILER, HOLMAN and HENLEY, JJ., concur.

DONNELLY, J., dissents in separate dissenting opinion filed.

MORGAN and BARDGETT, JJ., dissent and concur in separate dissenting opinion of DONNELLY, J.

DONNELLY, Judge (dissenting).

In 1961, the General Assembly provided for the formation of junior college districts in Missouri (V.A.M.S. §§ 178.770–178.890).

In 1965, the Missouri Western Junior College District, St. Joseph, Missouri, was formed. It consists of an urban component district and a rural component district. Four trustees were elected from the urban district and two trustees were elected from the rural district, under the provisions of V.A.M.S. § 178.820. It was determined by lot that Loren W. Schneider and John W. Newhart, the "rural" trustees, should serve for six years.

On February 25, 1970, in Hadley v. Junior College District, 397 U.S. 50, 56, 57, 90 S.Ct. 791, 25 L.Ed.2d 45, the Supreme Court of the United States said of V.A.M.S. § 178.820, supra:

"In this particular case the 'one man, one vote' principle is to some extent already reflected in the Missouri statute. That act provides that if no one or more of the component school districts has $33\frac{1}{3}\%$ or more of the total enumeration of the junior college district, then all six trustees are elected at large. If, however, one or more districts has between $33\frac{1}{3}\%$ and $50\%$ of the total enumeration, each such district elects two trustees and the rest are elected at large from the remaining districts. Similarly, if one district has between $50\%$ and $66\frac{2}{3}\%$ of the enumeration it elects three trustees, and if one district has more than $66\frac{2}{3}\%$ it elects four trustees. This scheme thus allocates increasingly more trustees to large districts as they represent an increasing proportion of the total enumeration.

"Although the statutory scheme reflects to some extent a principle of equal voting power, it does so in a way that does not comport with constitutional requirements. This is so because the Act necessarily results in a systematic discrimination against voters in the more populous school districts. This discrimination occurs because whenever a large district's percentage of the total enumeration falls within a certain percentage range it is always allocated the number of trustees corresponding to the bottom of that range. Unless a particular large district has exactly $33\frac{1}{3}\%$, $50\%$, or $66\frac{2}{3}\%$ of the total enumeration it will always have proportionally fewer trustees than the small districts. As has been pointed out, in the case of the Kansas City School District approximately $60\%$ of the total enumeration entitles that district to only $50\%$ of the trustees. Thus while voters in large school districts may frequently have less effective voting power than residents of small districts, they can never have more. Such built-in discrimination against voters in large districts cannot be sustained as a sufficient compliance with the constitutional mandate that each person's vote count as much as another's, as far as practicable. Consequently Missouri cannot allocate the junior college trustees according to the statutory formula employed in this case."

On March 5, 1971, Schneider and New-hart filed declarations of intent to be candidates to succeed themselves as trustees. A dispute arose as to whether an election should be held in April, 1971, and an election was not ordered by the board of trustees. On March 12, 1971, Schneider and Newhart filed a petition for writ of mandamus in the Circuit Court of Buchanan County, Missouri, requesting that an election be ordered on April 6, 1971, in the rural district.

On March 24, 1971, respondent judge issued his peremptory writ of mandamus ordering an election in the entire district (urban and rural) but providing that the two "trustees to be elected must be residents of the rural component district."

I have no doubt that the action of respondent judge represents a pragmatic and commendable effort to resolve an extremely troublesome problem within the dictates of *Hadley*, supra, and under the authority of Dusch v. Davis, 387 U.S. 112, 87 S.Ct. 1554, 18 L.Ed.2d 656, wherein the Court "upheld against constitutional challenge an election scheme that required that candidates be residents of certain districts that did not contain equal numbers of people." (*Hadley*, supra, 397 U.S. 50, 58, 90 S.Ct. 791, 796.) However, I cannot agree with the respondent judge insofar as his order was based on the idea that those portions of §§ 178.820 and 178.840 declared unconstitutional in *Hadley* are severable, and that an "at large" election could be ordered on the basis of those portions of the statutes which, in his opinion, "survived" *Hadley*. It follows, of course, that I disagree with the holding of the principal opinion that "the portion of the statute held unconstitutional is separable * * *."

In Allen v. Louisiana, 103 U.S. 80, 83–84, 26 L.Ed. 318, the Court said:

"It is an elementary principle that the same statute may be in part constitutional and in part unconstitutional, and that if the parts are wholly independent of each other, that which is constitutional may stand while that which is unconstitutional will be rejected. 'But,' as was said by Chief Justice Shaw, in *Warren* v. *Mayor and Aldermen of Charlestown* (2 Gray (Mass.), 84), 'if they are so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other as to warrant a belief that the legislature intended them as a whole, and that, if all could not be carried into effect, the legislature would not pass the residue independently, and some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected must fall with them.' The point to be determined in all such cases is whether the unconstitutional provisions are so connected with the general scope of the law as to make it impossible, if they are stricken out, to give effect to what appears to have been the intent of the legislature."

The law in Missouri has been stated to similar effect in State ex rel. Audrain County v. Hackmann, 275 Mo. 534, 543, 205 S.W. 12, 14, as follows:

"The test of the right to uphold a law, some portions of which may be invalid, is whether or not in so doing, after separating that which is invalid, a law in all respects complete and susceptible of constitutional enforcement is left, which the Legislature would have enacted if it had known that the exscinded portions were invalid."

I cannot believe the General Assembly (in 1961, when courts generally were reluctant to decide "political questions," and before any of us knew the "one man, one vote" principle was a part of the Constitution of the United States) would have enacted §§ 178.820 and 178.840 had it known that the "statutory formula" would be declared unconstitutional. I do believe the General Assembly, by its inclusion in the statutes of those portions declared unconstitutional, sought to guarantee to "small school districts that they * * * [would] not be entirely swallowed up by a large partner." (Dissenting opinion of Mister Justice Harlan in *Hadley*, supra, 397 U.S. 50, 64, 90 S.Ct. 791, 799). I would hold

all of §§ 178.820 and 178.840 unconstitutional. Preisler v. Calcaterra, 362 Mo. 662, 243 S.W.2d 62; Lee v. Clark, 224 S.C. 138, 77 S.E.2d 485; White v. Anderson, 155 Colo. 291, 394 P.2d 333; Grennan v. Sheldon, 401 Ill. 351, 82 N.E.2d 162; Pedlosky v. Massachusetts Institute of Technology, 352 Mass. 127, 224 N.E.2d 414.

I would hold that respondent judge was without *statutory* authority to issue the peremptory writ. The question then becomes: what should be done?

In Reynolds v. Sims, 377 U.S. 533, 586, 84 S.Ct. 1362, 1394, 12 L.Ed.2d 506 (1964), the Court recognized that what we have here "is primarily a matter for legislative consideration and determination," and that judicial relief should take the form of "prescribing a plan admittedly provisional in purpose so as not to usurp the primary responsibility * * * which rests with the legislature."

In Hadley v. Junior College District of Metropolitan Kansas City, Mo.Sup., 460 S.W.2d 1, 3 (1970), this Court called to the attention of the General Assembly "the need to amend the Junior College Law in order that it will conform with the decision of the Supreme Court of the United States." The General Assembly has not responded.

Accordingly, I would make the provisional rule in prohibition absolute, with directions to respondent judge: (1) to retain jurisdiction in the mandamus action; (2) to permit Schneider and Newhart to hold over as trustees until they, or their successors, are duly elected (Art. 7, § 12, Const. of Missouri); and (3) that respondent judge issue his writ in due course ordering an election in the entire district (urban and rural) in April, 1972, but providing that the two trustees to be elected must be residents of the rural component district.

I recognize, of course, that this Court cannot eradicate the "one man, one vote" principle. However, as I understand the teachings of the United States Supreme Court, we are licensed "under certain circumstances * * * [to] act and rely upon general equitable principles." (Reynolds v. Sims, supra, 377 U.S. 533, 585, 84 S.Ct. 1362, 1394, 12 L.Ed.2d 506.)

In 1965, the residents of the rural component district, mistakenly believing they were entitled by statute to representation on its board of trustees, became a part of the junior college district (V.A.M.S. § 178.800). They cannot now leave the junior college district (Junior College District of Metropolitan Kansas City v. Mayse, Mo.App., 446 S.W.2d 412). I have no reason to believe the United States Supreme Court would look with disfavor upon an attempt by this Court to "do equity" under these circumstances.

I respectfully dissent.