**STATE of Missouri ex rel. MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Relator,**

v.

**Honorable J.A. APPELQUIST, Judge of the Circuit Court of Greene County, Division 2, Respondent.**

**No. 13956.**

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 30, 1985.

Motion for Rehearing or Transfer to Supreme Court Denied Oct. 24, 1985.

Application to Transfer Denied
Nov. 21, 1985.

Bruce A. Ring, Philip R. Pruett, Jefferson City, for relator.

David W. Ansley, John E. Price, Rex McCall, Woolsey, Fisher, Whiteaker, Mc-

Donald & Ansley, Springfield, for respondent.

CROW, Judge.

This original proceeding in prohibition arises from a suit in which the parents of a young man fatally injured in a motor vehicle collision on a Missouri highway seek damages for his death. Defendants in that suit ("the underlying case") are Forrest Nolen Lewis, driver of a "tractor-trailer unit" that collided with the vehicle occupied by the decedent, and National Oil & Supply Company, Inc., alleged employer of Lewis and owner of the unit he was driving.

Lewis and National Oil, as third-party plaintiffs, filed a third-party petition in the underlying case naming as third-party defendants the contractor who built the segment of highway where the collision occurred and the Missouri Highway and Transportation Commission ("the Commission"). The third-party petition alleged that if the tractor-trailer unit was on the wrong side of the highway at the time of impact (as charged by the parents of the decedent), it was because an "accumulation of water" on the highway caused Lewis to lose control of the tractor-trailer unit and "caused it to jackknife" into the path of the decedent's vehicle. The accumulation of water, according to the third-party petition, resulted from the Commission's negligence in the design, construction, inspection and maintenance of the highway at the collision site. The third-party petition also attributed the presence of the water to negligence on the part of the contractor, but no issues regarding the contractor are involved in this prohibition proceeding.

As pertinent here, the third-party petition averred that if Lewis or National Oil, or both, were found liable to the plaintiffs, there should be "a determination of the relative fault" of the Commission in causing the plaintiffs' damages. In the alternative, said the third-party petition, any responsibility of Lewis or National Oil for the death of the plaintiffs' son is the responsibility of the Commission "to the extent it has procured or provided insurance coverage or self-insurance, pursuant to the application of comparative fault under the laws

of the State of Missouri, and would be subject to apportionment of fault, allocation of fault, and contribution pursuant to applicable comparative fault laws, or in the alternative, [the Commission] would be liable to [Lewis and National Oil] for the entire amount of any judgment entered against [them], including attorney fees, litigation expenses, damages, and court costs."

The Commission filed a motion to dismiss the third-party petition. The motion alleged that the Commission "is immune from suit or recovery by virtue of the doctrine of sovereign immunity and no exception exists to this doctrine except as provided in sections 537.600 et seq. RSMo." The motion explained that the Commission had not waived its immunity against suit or recovery in that no liability insurance exists that would indemnify the Commission against any judgment for the plaintiffs or Lewis or National Oil. Furthermore, said the motion, no self-insurance plan exists for any such indemnity. The motion was accompanied by an affidavit of the Commission's chief counsel verifying that the Commission has no liability insurance and no self-insurance plan.

The circuit judge before whom the underlying case is pending denied the Commission's motion to dismiss. The Commission promptly filed this prohibition proceeding with us, praying for an order commanding said judge ("respondent") to (a) refrain from proceeding further against the Commission in the underlying case, and (b) dismiss the third-party petition as to the Commission.

We issued a preliminary order prohibiting respondent from proceeding further against the Commission. Thereafter, in timely fashion, counsel for respondent[1] filed a motion to dismiss the Commission's petition for writ of prohibition and, contemporaneously therewith, filed an answer to said petition. We took the motion to dismiss with the case.

Prior to *Jones v. State Highway Commission,* 557 S.W.2d 225 (Mo. banc 1977), the State Highway Commission, predecessor of the Missouri Highway and Transportation Commission, was shielded from tort liability by the doctrine of sovereign immunity. *Bush v. State Highway Commission,* 329 Mo. 843, 46 S.W.2d 854 (1932); *Rector v. Tobin Construction Co.,* 351 S.W.2d 816, 820[2] (Mo.App.1961), *opinion after transfer* 377 S.W.2d 409 (Mo. banc 1964); *Manley v. State Highway Commission,* 82 S.W.2d 619, 620[2] (Mo.App.1935). *Jones,* however, abrogated the doctrine of sovereign immunity prospectively as to all tort claims arising on or after August 15, 1978.[2] *Jones,* 557 S.W.2d at 231[11].

The General Assembly of Missouri, in C.C.S.S.S.S.C.S.H.S.H.B. 1650, Laws 1978, pp. 982–85, effective August 13, 1978 ("the 1978 Act"), nullified the effect of *Jones* by reestablishing, with some modification, the doctrine of sovereign immunity as it existed prior to *Jones.* Section 1 of the 1978 Act (codified as § 537.600, RSMo 1978[3]), set out marginally,[4] and Section 2 of the

---

**1.** Counsel representing Lewis and National Oil in the underlying case represent respondent in this prohibition proceeding.

**2.** Sovereign immunity was abrogated instanter as to the tort claims in *Jones* and the three other cases decided simultaneously therewith. *Jones,* 557 S.W.2d at 231[11]; *Fowler v. Board of Regents for Central Missouri State University,* 637 S.W.2d 352, 353 (Mo.App.1982).

**3.** All references to statutes are to RSMo 1978.

**4.** Section 537.600 provides:

"Such sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977, except to the extent waived, abrogated or modified by statutes in effect prior to that date, shall remain in full force and effect; except that, the immunity of the public entity from liability and suit for compensatory damages for negligent acts or omissions is hereby expressly waived in the following instances:

"(1) Injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles within the course of their employment;

"(2) Injuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury directly resulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and that either a negligent or wrongful act or omission

1978 Act (codified as § 537.610), set out in part marginally,[5] are pertinent to the dispute before us.

*Winston v. Reorganized School District R-2,* 636 S.W.2d 324 (Mo. banc 1982), held that limiting the waiver of sovereign immunity to the two situations expressly described in subsections "(1)" and "(2)" of § 537.600 did not offend U.S. Const. amend. XIV or Mo. Const. art. I, § 2 (1945).

*Bartley v. Special School District of St. Louis County,* 649 S.W.2d 864, 868 (Mo. banc 1983), held that under §§ 537.600 and 537.610, sovereign immunity was waived *only* in the two situations expressly provided in subsections "(1)" and "(2)" of § 537.-600 and, even in those two instances, *only* to the extent that the public entity had liability insurance for such purposes.

*Best v. Schoemehl,* 652 S.W.2d 740, 743[4, 5] (Mo.App.1983), a suit against the Board of Police Commissioners of the City of St. Louis for injuries allegedly caused by the negligent operation of a motor vehicle by an employee of the Board, held that the petition failed to state a cause of action in that it failed to allege that the Board had purchased liability insurance covering such an occurrence or that the Board had adopted any self-insurance plan for such purpose.

*Talley v. Missouri Highway and Transportation Commission,* 659 S.W.2d 290,

292 (Mo.App.1983), an action against the Commission for damages allegedly caused by a dangerous condition in a public highway, held that the injured parties could not recover unless they pleaded and proved that the Commission had insurance applicable to the claim.

*Hohimer v. Missouri Highway and Transportation Commission,* 659 S.W.2d 521 (Mo.App.1983), another case where recovery was sought for damages allegedly caused by a dangerous condition in a public highway, upheld summary judgment in favor of the Commission on the ground that the Commission was immune from suit under the doctrine of sovereign immunity in that it had no insurance to indemnify it from a judgment in favor of the plaintiffs.

Undismayed by these holdings, resourceful counsel for respondent offer three theories in justification of respondent's denial of the Commission's motion to dismiss the third-party petition. The first theory is that *Bartley* was "modified" by *Gustafson v. Benda,* 661 S.W.2d 11 (Mo. banc 1983), which supplanted the doctrines of contributory negligence, last clear chance, and humanitarian negligence with a comprehensive system of comparative fault. 661 S.W.2d at 16[4]. *Gustafson,* say counsel for respondent, recognized that "fairness and justice" can best be achieved by joining all parties to a transaction in a single law-

of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

5. Section 537.610 provides, in pertinent part:

"1. The commissioner of administration, through the purchasing division, and the governing body of each political subdivision of this state, notwithstanding any other provision of law, may purchase liability insurance for tort claims made against the state or the political subdivision, but the maximum amount of such coverage shall not exceed eight hundred thousand dollars for all claims arising out of a single occurrence and shall not exceed one hundred thousand dollars for any one person in a single accident or occurrence, except for those claims governed by the provisions of the Missouri workmen's com-

pensation law, chapter 287, RSMo, and no amount in excess of the above limits shall be awarded or settled upon. Sovereign immunity for the state of Missouri and its political subdivisions is waived only to the maximum amount of and only for the purposes covered by such policy of insurance purchased pursuant to the provisions of this section and in such amount and for such purposes provided in any self-insurance plan duly adopted by the governing body of any political subdivision of the state.

"2. The liability of the state and its public entities on claims within the scope of sections 537.600 to 537.650, shall not exceed eight hundred thousand dollars for all claims arising out of a single accident or occurrence and shall not exceed one hundred thousand dollars for any one person in a single accident or occurrence, except for those claims governed by the provisions of the Missouri workmen's compensation law, chapter 287, RSMo.

...."

suit for the comparison of the fault of all concerned. *See:* 661 S.W.2d at 15. According to counsel for respondent, dismissing the third-party petition as to the Commission in the underlying case would be "inconsistent with the purpose of joining all parties to an action as enunciated in *Gustafson."*

■ We are unconvinced that *Gustafson* impaired *Bartley's* construction of §§ 537.-600 and 537.610. *Bartley* held that statutory provisions that waive sovereign immunity must be strictly construed. 649 S.W.2d at 868[11]. *Bartley* also held that by enacting the 1978 Act, the General Assembly of Missouri intended to reestablish the doctrine of sovereign immunity as it existed prior to *Jones,* with any exceptions to its status being provided in the 1978 Act. 649 S.W.2d at 870. Given the narrow construction of §§ 537.600 and 537.610 by the Supreme Court of Missouri in *Bartley,* we are unpersuaded that the Supreme Court intended, by its decision in *Gustafson,* to allow a governmental entity shielded from tort liability by sovereign immunity under the 1978 Act to be joined as a party in a tort case for the purpose of adjudicating its share of liability for the damages sustained by the injured party.

Indeed, *Gustafson* points out that in *State ex rel. Maryland Heights Concrete Contractors, Inc. v. Ferriss,* 588 S.W.2d 489 (Mo. banc 1979), the Supreme Court of Missouri recognized the statutory immunity of employers in workers' compensation cases and declined to leave them as a party defendant for the sole purpose of determining their comparative fault. *Gustafson,* 661 S.W.2d at 14. *Gustafson* also notes that in *Kendall v. Sears, Roebuck and Co.,* 634 S.W.2d 176 (Mo. banc 1982), the Supreme Court reaffirmed its commitment to parental immunity and declined to keep the parent of a party in a damage suit for the purpose of determining his comparative fault. *Gustafson,* 661 S.W.2d at 14. *Kendall,* citing *Missouri Pacific Railroad Co. v. Whitehead & Kales Co.,* 566 S.W.2d 466 (Mo. banc 1978), held that the right to non-contractual indemnity presupposes *actionable* negligence of both parties toward a third party. *Kendall,* 634 S.W.2d at 179.

*Kendall* also cited *Whitehead & Kales* for the proposition that in adjudicating issues of indemnity or contribution between tortfeasors, the essential thing is the attempt to be fair as between persons subjected to a *common legal liability. Kendall,* 634 S.W.2d at 179.

*Gustafson,* moreover, was not a dispute between several tortfeasors regarding apportionment of fault for an injured party's damages, but was instead a suit by one plaintiff against one defendant arising from a collision between a motorcycle and an automobile.

For the above reasons, we hold that *Gustafson* supplies no basis for respondent's denial of the Commission's motion to dismiss the third-party petition.

■ As a separate element of their first theory, counsel for respondent argue that the Supreme Court in *Bartley* did not consider whether the General Assembly, in the 1978 Act, intended that providing insurance for the two types of claims specified in subsections "(1)" and "(2)" of § 537.600 be mandatory or discretionary. Counsel for respondent suggest that the Supreme Court, in deciding *Bartley,* assumed, but did not hold, that under § 537.610.1, purchasing liability insurance or providing self-insurance was discretionary. That assumption, according to counsel for respondent, was erroneous. The correct interpretation of § 537.610.1, say counsel for respondent, is that each political subdivision of the State *must* either purchase liability insurance or adopt a self-insurance plan covering the types of claims specified in subsections "(1)" and "(2)" of § 537.600. That is, the choice is not whether to provide insurance; the choice is merely which of the two methods to use in providing it. Failure of a political subdivision to purchase liability insurance or adopt a self-insurance plan would, according to counsel for respondent, expose the political subdivision to liability up to the limits provided in § 537.610.2 for claims of the types described in subsections "(1)" and "(2)" of § 537.600.

We disagree. *Bartley* makes it indisputably clear that under the 1978 Act, sovereign immunity as it existed prior to *Jones* remains in full force and effect, subject only to the limited exceptions carved out by the Act. Those exceptions (subsections "(1)" and "(2)" of § 537.600) become operative "only to the extent the public entity has purchased liability insurance for such purposes." *Bartley*, 649 S.W.2d at 868. *Bartley* states: "[W]e find that the only exceptions to the doctrine as it existed prior to *Jones* are those contained in § 537.-600(1) and (2)—operation of motor vehicles and condition of property—as modified by § 537.610, *when insurance has been acquired.*" 649 S.W.2d at 870. (Emphasis added). *Bartley's* message is clear: no insurance, no waiver.

The dissenting opinion in *Bartley* champions the position embraced by counsel for respondent but concedes that the majority opinion rejects it. *Id.* at 871.

The first theory tendered by respondent's counsel is without merit.

The second theory relied on by counsel for respondent is that if *Bartley's* interpretation of § 537.610.1 be correct, then that section, in empowering the governing body of each political subdivision of the State to purchase liability insurance or adopt a self-insurance plan (and thereby decide whether or to what extent its sovereign immunity is waived in the instances specified in subsections "(1)" and "(2)" of § 537.600) is an "unconstitutional delegation of the legislature's power to the state's administrative bodies." Citing *Winston*, 636 S.W.2d 324, 328, and *Fowler*, 637 S.W.2d 352, 354, counsel insist that the sovereign immunity of the State and its entities may be waived only by the General Assembly, not by officers, agents or employees of the State. Counsel underscore the statement in *Winston* that within constitutional limits, a sovereign may prescribe the terms and conditions under which it may be sued, and the decision to waive immunity, and to what extent it is waived, lies within the legislature's purview. 636 S.W.2d at 328. Respondent's counsel argue that inasmuch as § 537.610.1 contains no standards to guide the governing bodies of the State's political subdivisions in deciding whether, or to what extent, to waive sovereign immunity, it is invalid.

Another reason why § 537.610.1 is invalid, according to counsel for respondent, is that if a person is injured under circumstances described in subsections "(1)" or "(2)" of § 537.600 and the political subdivision responsible for the injury has insurance, the injured party has recourse, but if the political subdivision has chosen not to have insurance, the injured person has no recourse. This, say respondent's counsel, results in discrimination between two classes of people, those injured by *insured* political·subdivisions and those injured by *uninsured* political subdivisions. Such discrimination, insist counsel, violates "equal protection guaranties" of U.S. Const. amend. XIV and Mo. Const. art. I, § 2 (1945).

These constitutional attacks on § 537.610.1 require us to consider whether we have jurisdiction of this proceeding, as we are mindful that exclusive *appellate* jurisdiction in all cases involving the validity of a statute of this State lies in the Supreme Court of Missouri. Mo. Const. art. V, § 3 (1945, amended 1982);[6] *State ex rel. Jordon v. Mehan*, 597 S.W.2d 724, 726 (Mo.App.1980). This proceeding, however, did not reach us by appeal, but instead by application for an original remedial writ. Consequently, we have jurisdiction under Mo. Const. art. V, § 4.1 (1945, amended 1976), even though resolution of the issues may require a determination of the validity of a statute. *Jordon*, 597 S.W.2d at 725–26[1]; *State ex rel. Coffman v. Crain*, 308 S.W.2d 451, 454[7] (Mo.App.1958); *State ex rel. City of Mansfield v. Crain*, 301 S.W.2d 415, 417–18[1, 2] (Mo.App.1957).

Implicit in the second theory tendered by respondent's counsel is the assumption that

---

6. Mo. Const. art. V, § 3 (1945, amended 1982) provides, in pertinent part: "The supreme court shall have exclusive appellate jurisdiction in all cases involving the validity of a ... statute ... of this state...."

if § 537.610.1 be held unconstitutional for either of the reasons advanced by counsel, subsections "(1)" and "(2)" of § 537.600 remain in force and unconditionally waive sovereign immunity in the instances therein described.

We reject that assumption. Section 1.140 provides:

"The provisions of every statute are severable. If any provision of a statute is found by a court of competent jurisdiction to be unconstitutional, the remaining provisions of the statute are valid unless the court finds the valid provisions of the statute are so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one; or unless the court finds that the valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent."

■ The test of the right to uphold a law, some portions of which may be invalid, is whether or not in doing so, after separating that which is invalid, a law in all respects complete and susceptible of constitutional enforcement is left, which the General Assembly would have enacted if it had known that the exscinded portions were invalid. *State ex rel. Enright v. Connett*, 475 S.W.2d 78, 81[1] (Mo. banc 1972); *State ex rel. Audrain County v. Hackmann*, 275 Mo. 534, 205 S.W. 12, 14[4] (banc 1918).

Here, the intent of the General Assembly in enacting the 1978 Act, as divined by the Supreme Court of Missouri in *Bartley,* was to reestablish the doctrine of sovereign immunity as it existed prior to *Jones,* with any exceptions being those in the 1978 Act. *Bartley,* 649 S.W.2d at 870. The Supreme Court further found in *Bartley* that the General Assembly intended to waive sovereign immunity *only* in the instances described in subsections "(1)" and "(2)" of § 537.600 and, even in those instances, *only* to the extent that the political subdivision had insurance for such purposes. *Bartley,* 649 S.W.2d at 870.

Consequently, subsections "(1)" and "(2)" of § 537.600 are so essentially and inseparably connected with § 537.610.1, and so dependent upon it, that we cannot presume that the General Assembly would have enacted subsections "(1)" and "(2)" of § 537.-600 without enacting § 537.610.1.

On the contrary, it is evident to us from the legislative intent as determined in *Bartley* that the General Assembly would not have enacted subsections "(1)" and "(2)" of § 537.600 if the General Assembly had believed that § 537.610.1 would be declared invalid. The General Assembly obviously intended by the 1978 Act to nullify the effect of *Jones* and to reestablish the doctrine of sovereign immunity except in the instances described in subsections "(1)" and "(2)" of § 537.600, as limited by § 537.610.1.

■ Given the holding in *Bartley* that subsections "(1)" and "(2)" of § 537.600 waive sovereign immunity only to the extent that insurance is provided for such purposes under § 537.610.1, we are convinced that under § 1.140, *Enright* and *Audrain County,* subsections "(1)" and "(2)" of § 537.600 cannot remain viable if § 537.-610.1 be declared invalid.

Had the General Assembly assumed that § 537.610.1 was constitutionally infirm, we believe that the General Assembly would have enacted only that portion of § 537.600 which restores sovereign immunity generally as it existed prior to *Jones,* and would not have enacted that portion of § 537.600 which waives sovereign immunity in the instances described in subsections "(1)" and "(2)" (as limited by § 537.610.1).

Accordingly, we need not decide whether § 537.610.1 is constitutional. If it is, the Commission is shielded by sovereign immunity from liability to Lewis and National Oil in the underlying case, as the absence of insurance means there is no waiver of sovereign immunity under subsection "(2)" of § 537.600, the subsection pertinent to the third-party petition of Lewis and National Oil. On the other hand, if § 537.-610.1 be unconstitutional, subsections "(1)" and "(2)" of § 537.600 cannot survive, as

heretofore explained. Thus, the Commission is immune from liability to Lewis and National Oil in the underlying case whether § 537.610.1 is constitutional or not, as the restoration of sovereign immunity in § 537.600 would survive the exscision of subsections "(1)" and "(2)" thereof.

■ Our decision that it is unnecessary to decide the constitutionality of § 537.-610.1 is analogous to that of the Supreme Court of Missouri in *State ex rel. Kansas City v. State Highway Commission,* 349 Mo. 865, 163 S.W.2d 948 (banc 1942). There, a statute contained a provision that arguably constituted an unconstitutional delegation of one political subdivision's power to another. Another provision in the statute was not susceptible to that challenge. The Supreme Court concluded it was unnecessary to pass on the constitutionality of the former section, as the latter section was dispositive of the case and the latter section was "sufficiently separable" from the former section that the latter section could stand even though the former section were objectionable. 163 S.W.2d at 952[2].

The second theory tendered by respondent's counsel is without merit.

The third theory relied on by counsel for respondent is that even if the Commission, by virtue of the 1978 Act and *Bartley,* be immune from *liability* to Lewis or National Oil, the Commission is not necessarily immune from *suit* "to determine its relative percentage of fault." According to counsel for respondent, nothing in the 1978 Act or *Bartley* protects the Commission from a "third-party action" to determine its "comparative fault" in causing an injured party's damages. The *Gustafson* concept of joining all parties to a transaction in a single lawsuit for the comparison of the fault of all concerned, say counsel for respondent, cannot be realized if a party immune from liability is also immune from suit.

Counsel insist that *Bartley* did not hold that a public entity immune from liability under subsections "(1)" and "(2)" of § 537.-600 by reason of the absence of insurance is also immune from suit. Counsel maintain that because § 537.610.2 mentions only liability, the 1978 Act cannot be construed to immunize public entities from suit.

The contention, while ingenious, is untenable. In *State ex rel. Missouri Department of Agriculture v. McHenry,* 687 S.W.2d 178 (Mo. banc 1985), prohibition was sought in regard to a suit in which money damages were demanded from the State of Missouri, the Missouri Department of Agriculture, and the Grain Inspection and Warehousing Division "because of alleged deficiencies in the performances of the state and its officials." *Id.* at 180. The Supreme Court of Missouri prohibited the trial court from allowing the money damages claim to proceed against the State, the Department and the Division, noting that the 1978 Act mandated the restoration of sovereign immunity as it existed prior to *Jones. McHenry,* 687 S.W.2d at 182. That doctrine, said the Supreme Court, was designed to protect the public treasury against the kind of claims sought to be maintained against the State, the Department and the Division. *Id.* at [12]. In holding that prohibition was an appropriate remedy, the Supreme Court observed that "immunity" connotes not only immunity from judgment but also immunity from suit. *Id.* at 181[2]. The Supreme Court added that it is appropriate to require a litigant who sues the state or its officers to file a petition demonstrating a viable theory of liability. *Id.* at [4].

Prior to *Jones,* the State, by reason of its sovereign immunity, was immune from suit and could not be sued in its own courts without its consent. *State ex rel. Eagleton v. Hall,* 389 S.W.2d 798, 801[3] (Mo. banc 1965).

*State ex rel. Missouri Division of Family Services v. Moore,* 657 S.W.2d 32 (Mo. App.1983), held that the 1978 Act nullified *Jones* and restored sovereign immunity to the status it occupied before *Jones,* subject to §§ 537.600(1) and (2) and 537.610. *Moore,* 657 S.W.2d at 34. Accordingly, *Moore* held that the Division of Family Services was immune from *suit* for compensatory and punitive damages for wrongfully garnishing a federal income tax refund to collect a child support judgment

assigned to the Division. A preliminary order in prohibition commanding the trial court to refrain from proceeding further in such suit was made absolute.

■ On the basis of *McHenry, Eagleton* and *Moore*, we reject the hypothesis of counsel for respondent that the Commission, even if immune from liability, is not immune from suit.

The final theory relied on by respondent's counsel is merely a reprise of the first three. Consequently, it requires no discussion and is denied.

The preliminary order in prohibition is made absolute. Respondent is prohibited from proceeding further against the Commission in the underlying case and is ordered to grant the Commission's motion to dismiss the third-party petition as to the Commission. If, despite the affidavit of the Commission's chief counsel, Lewis and National Oil believe there is liability insurance or a self-insurance plan that would indemnify the Commission for damages assessed against it under the allegations of the third-party petition, Lewis and National Oil may request respondent to grant them leave to file an amended third-party petition alleging the existence of such insurance, and respondent shall grant Lewis and National Oil a reasonable time to do so.

Respondent's motion to dismiss the Commission's petition for writ of prohibition and to quash our preliminary order in prohibition is denied.

PREWITT, C.J., HOGAN, P.J., and MAUS, J., concur.

---

**7.** The 1983 Act was enacted at the First Regular Session of the Eighty-second General Assembly which adjourned June 30, 1983. Under Mo. Const. art. III, § 29 (1945, amended 1970), the 1983 Act took effect 90 days after adjournment.

**8.** Section 34.260, RSMo Cum.Supp.1983 ("the 1983 Act"), provides:

"The commissioner of administration may procure on the basis of competitive bids under the provisions of this chapter, motor vehicle, aircraft, and marine liability insurance covering the operation of state-controlled motor vehicles, aircraft, and marine vessels by state employees, members of the Missouri national guard, or agents in the course of their

---

## ON MOTION FOR REHEARING OR, ALTERNATIVELY, TO TRANSFER TO SUPREME COURT

PER CURIAM.

Counsel for respondent, in a motion for rehearing or, in the alternative, to transfer this case to the Supreme Court of Missouri, cite several statutes not heretofore cited either to respondent or to us. These statutes, say counsel for respondent, are in direct conflict with our opinion.

■ Were this case before us on appeal from a judgment denying relief on the third-party petition, we would not be obliged to consider these newly cited statutes, as an appellate court, on appeal from a judgment denying relief, will not consider the question of liability on a basis not presented in the trial court. *Moore v. Riley,* 487 S.W.2d 555, 558–59[2] (Mo.1972). However, the case is before us as an original proceeding in prohibition, presenting the question whether respondent should be forbidden from proceeding further against the Commission in the underlying case. Therefore, any statute exposing the Commission to liability to Lewis or National Oil under the third-party petition must be considered.

The first newly cited statute is C.C.S. H.B. 354, Laws 1983, pp. 284–85, effective September 28, 1983 ("the 1983 Act"),[7] which repealed § 34.260, RSMo 1978, and enacted in lieu thereof one new section carrying the same number. The new section, codified as § 34.260, RSMo Cum.Supp. 1983, is set out marginally.[8]

---

employment, military duties, or the scope of their agency, or for dangerous conditions of property as defined in section 537.600, RSMo; provided, however, that in lieu of procuring insurance to cover such risks, the commissioner may determine that the state shall self-insure against all or any portion of such risks. Each department and agency of state government coming within the provisions of sections 34.260 to 34.275 shall provide the commissioner with such information regarding the risks to be insured as he deems necessary. Sections 34.260 to 34.275 shall not apply to the departments and agencies which, on September 28, 1973, provided motor vehicle liability insurance for their employees who oper-

The origin of § 34.260, RSMo 1978, was H.B. 353, Laws 1973, pp. 108–09 ("the 1973 Act"), which contained sections numbered 1 through 4. Those sections, respectively, became codified as §§ 34.260, 34.265, 34.-270 and 34.275, RSMo Cum.Supp.1975. They are set out marginally.[9]

It is evident that the purpose of the 1973 Act was to authorize the State to provide, at public expense, liability insurance coverage for State *employees* while they were operating State-owned motor vehicles and vessels in the course of their employment.[10] Indeed, the title of the 1973

ate state-controlled motor vehicles, aircraft, or marine vessels in the course of their employment, military duties, or scope of their agency. The procurement of liability insurance or the adoption of a plan of self-insurance by the commissioner of administration shall not limit the express waiver of sovereign immunity *in all cases within such situations* specified therein whether or not the public entity was functioning in a governmental or proprietary capacity or whether or not the public entity is: (1) covered by liability insurance or a self-insurance plan or (2) uninsured. In the other situations specified in this section, and in such other situations of tort liability for which insurance or a self-insurance plan is obtained or provided, sovereign immunity is waived to the maximum amount of, and for the purposes covered by, such policy of insurance or self-insurance plan, provided that sovereign immunity in instances other than those specified in subdivisions (1) and (2) of section 537.600, RSMo, shall be retained in the event the public entity elects not to procure insurance or to implement a self-insurance plan under the provisions of sections 537.620 to 537.650, RSMo."

9. Section 34.260, RSMo Cum.Supp.1975, provided:

"The state purchasing agent shall procure on the basis of competitive bids under the provisions of chapter 34, motor vehicle and marine liability insurance covering the operation of state-owned vehicles and vessels by state employees in the course of their employment. Each department and agency of state government *coming within the provisions of* sections 34.260 to 34.275 shall provide the state purchasing agent with the information necessary to procure the insurance, and the cost of the insurance for each department and agency shall be paid out of the appropriations to the department or agency. Sections 34.260 to 34.275 shall not apply to the departments and agencies which, on September 28, 1973, provide motor vehicle liability insurance for employees who drive state-owned motor vehicles in the course of their employment." Section 34.265, RSMo Cum.Supp.1975, provided:

"Motor vehicle or marine liability insurance acquired pursuant to sections 34.260 to 34.275 shall provide blanket coverage for state employees while operating state-owned motor vehicles or vessels on state business or in the

course of their employment subject to the following limits exclusive of interest and costs:

(1) Not less than twenty-five thousand dollars because of bodily injury to, or the death of, one person in any one accident;

(2) Subject to the limit in subdivision (1), not less than fifty thousand dollars because of bodily injury to, or death of, two or more persons in any one accident; and

(3) Not less than five thousand dollars because of injury to, or destruction of, property of others in any one accident."

Section 34.270, RSMo Cum.Supp.1975, provided:

"Insurance acquired pursuant to sections 34.260 to 34.275 shall be issued by an insurance company or association authorized to transact business in this state and shall by its terms provide adequate insurance for the employee under standard policy provisions approved by the state division of insurance for the coverage specified in sections 34.260 to 34.275 for any damages caused by reason of death, personal injury, or property damage resulting from the negligent operation of a state-owned motor vehicle or vessel on state business or within the course of his employment."

Section 34.275, RSMo Cum.Supp.1975, provided:

"Nothing in sections 34.260 to 34.275 is intended to nor shall it be construed as a waiver of sovereign immunity or the acknowledgment or creation of any liability on the part of the state for personal injury, death, or property damage."

10. Section 34.260, RSMo Cum.Supp.1975, indicated that even before the 1973 Act became effective—it took effect September 28, 1973—there were State departments and agencies that provided motor vehicle liability insurance for employees who drove State-owned motor vehicles in the course of their employment. The Commission was given statutory authority to provide such insurance for its employees in 1971. H.B. 60, Laws 1971, pp. 287–88 (now codified as § 226.092, RSMo 1978) provided: "The State Highway Commission is authorized, when considered by it to be in the public interest, to acquire and to pay for, as part compensation to the employee involved, liability insurance covering the operation of state-owned vehicles involved in the performance of opera-

Act was: "An Act relating to motor vehicle and marine liability insurance for state employees operating state owned vehicles and vessels." The title of an act is necessarily a part thereof and is to be considered in construing the act. *Bullington v. State,* 459 S.W.2d 334, 341[3] (Mo.1970); *A.J. Meyer & Co. v. Unemployment Compensation Commission,* 348 Mo. 147, 152 S.W.2d 184, 189[4] (1941). Title, in this context, means the title as enacted by the General Assembly, not the catchwords prefixed by the Revisor of Statutes which are not a part of the title in a constitutional sense. *Bullington,* 459 S.W.2d at 341[3]; *Ex parte Lockhart,* 350 Mo. 1220, 171 S.W.2d 660, 663[5] (banc 1943).

It was unnecessary, of course, to provide insurance protection for the *State* against tort liability in 1973 because, at that time, the State was shielded from such liability by the doctrine of sovereign immunity. *Jones,* 557 S.W.2d at 226; *Bush,* 46 S.W.2d at 857[1]. It is manifest from § 34.275, RSMo Cum.Supp.1975 [11] (a part of the 1973 Act), that the General Assembly, in enacting the 1973 Act, had no intention of waiving or abrogating the State's sovereign immunity from tort liability.

Sections 34.260, 34.265 and 34.270, RSMo Cum.Supp.1975, were amended in 1976 by H.B. 1528, Laws 1976, pp. 602–04, which added State-owned aircraft to the vehicles for which liability insurance was to be procured, and added members of the Missouri national guard "or agents in the course of their employment" to the employees to be covered. Section 34.275, RSMo Cum.Supp. 1975, was not amended by the 1976 legislation. The 1976 legislation did, however, contain a new section defining the terms "aircraft," "motor vehicle," and "state-controlled." That section became codified as § 34.272, RSMo Supp.1976.

After 1976, no changes were made in §§ 34.260 through 34.275 until the 1983

Act,[12] which, as explained earlier, changed § 34.260. That section was the only one affected by the 1983 Act. The other sections (34.265, 34.270, 34.272 and 34.275) remained intact. Section 34.275, it will be remembered, is the section that provides that nothing in §§ 34.260 to 34.275 is intended to nor shall be construed as a waiver of sovereign immunity or the acknowledgment or creation of any liability on the part of the State for personal injury, death or property damage.

Admittedly, that portion of the 1983 Act[13] beginning with the fourth sentence and continuing to the end of the Act, while mysteriously worded and difficult to fathom, is nonetheless arguably subject to interpretation as an unconditional waiver of sovereign immunity in the instances specified in subsections "(1)" and "(2)" of § 537.600, RSMo 1978. We cannot ignore, however, that § 34.275, RSMo 1978, ostensibly remained undisturbed by the 1983 Act.

It could be maintained, of course, that § 34.275, RSMo 1978, to the extent that it may be in conflict with the 1983 Act, was repealed by implication by the latter. It has been held that where there are two legislative acts on one subject and they are repugnant in any of their provisions, the later act, without any repealing laws, operates to the extent of the repugnancy to repeal the earlier. *City of Kirkwood v. Allen,* 399 S.W.2d 30, 34[1] (Mo. banc 1966).

Be that as it may, we need not ponder the effect of the 1983 Act on § 34.275, RSMo 1978, or on §§ 537.600[14] and 537.-610,[15] RSMo 1978. That is because the 1983 Act took effect, as already noted, on September 28, 1983. The third-party petition alleges that the collision that caused the death of the plaintiffs' son occurred March 4, 1983, and counsel for respondent

tions of the Commission. The immunity in tort actions of the State and the State Highway Commission shall not be in any way affected by this act."

11. Section 34.275, RSMo Cum.Supp.1975, is the last statute appearing in footnote 9, *supra.*

12. Footnote 8, *supra.*

13. Footnote 8, *supra.*

14. Footnote 4, *supra.*

15. Footnote 5, *supra.*

concede that the cause of action that Lewis and National Oil seek to maintain against the Commission in the third-party petition "accrued" at the time of the collision, a date more than 6 months prior to the effective date of the 1983 Act. Consequently, whether the third-party petition states a cause of action against the Commission is to be determined by §§ 537.600 and 537.-610, RSMo 1978, as construed by *Bartley*, and without regard to the 1983 Act.

Counsel for respondent argue otherwise, insisting that the 1983 Act "was a message from the legislature to the Supreme Court that the decision of the majority in *Bartley* was incorrect," and that the dissenting opinion correctly interpreted §§ 537.600 and 537.610, RSMo 1978. Therefore, say counsel for respondent, we should reject *Bartley* and follow the General Assembly's "construction" of §§ 537.600 and 537.610 as set forth in the 1983 Act. Subsequent legislation declaring the intent of an earlier statute is, according to counsel for respondent, accorded great weight in construing that statute.

■ The argument of counsel for respondent overlooks the fact that §§ 537.600 and 537.610, RSMo 1978, had been construed by *Bartley* prior to the effective date of the 1983 Act. It has been held that the judicial construction of a statute by a court of last resort becomes as much a part of the statute as the text itself. *Eberle v. Koplar*, 85 S.W.2d 919, 923[7] (Mo.App. 1935). Thus, after the decision in *Bartley* and absent amendment by the General Assembly or a different construction by subsequent decision of the Supreme Court of Missouri, §§ 537.600 and 537.610, RSMo 1978, meant what *Bartley* said they meant.

That being so, and bearing in mind that the claim that Lewis and National Oil seek to assert against the Commission "accrued" before the effective date of the 1983 Act, the only way that the 1983 Act could possibly aid Lewis and National Oil would be if the 1983 Act were applied retroactively.

■ Statutes are generally presumed to operate prospectively unless the legislative intent that they be given retro-active operation clearly appears from the express language of the act or by necessary or unavoidable implication. *Department of Social Services v. Villa Capri Homes, Inc.*, 684 S.W.2d 327, 332[2] (Mo. banc 1985); *Lincoln Credit Co. v. Peach*, 636 S.W.2d 31, 34[3] (Mo. banc 1982), *appeal dismissed*, 459 U.S. 1094, 103 S.Ct. 711, 74 L.Ed.2d 942 (1983). We find neither express language nor necessary or unavoidable implication in the 1983 Act that it was meant to operate retroactively. Accordingly, we reject the contention of counsel for respondent that the 1983 Act should be applied retroactively.

Having done that, we need not consider whether retroactive application of the 1983 Act would offend Mo. Const. art. I, § 13 (1945), which provides:

"That no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges or immunities, can be enacted."

We likewise need not determine whether, or to what extent, the 1983 Act, when it became effective, changed *Bartley's* construction of §§ 537.600 and 537.610, RSMo 1978, as any such change at that time would not have impaired the sovereign immunity that had shielded the State from tort liability for a claim that had "accrued" on March 4, 1983.

The premise of counsel for respondent that the 1983 Act compels a different result than the one reached in our opinion is, for the foregoing reasons, without merit.

We now turn our attention to other legislative activity that took place in 1983. Counsel for respondent cite S.B. 275, Laws 1983, pp. 378–80 (hereafter referred to as "S.B. 275"), which repealed both versions of § 105.710 appearing in RSMo Supp.1982 and enacted in lieu thereof four new sections (§§ 105.711, 105.716, 105.721 and 105.-726). H.B. 275, among other things, created a "State Legal Expense Fund" to replace the Tort Defense Fund, and provided that moneys therein would be available, in certain circumstances, for payment of claims or judgments against the State or

any agency thereof "pursuant to section 537.600, RSMo," and for payment of claims or judgments against any officer or employee of the State and members of the Missouri national guard based on conduct arising out of and performed in connection with official duties on behalf of the State.

H.B. 275 took effect September 28, 1983. We have carefully studied H.B. 275 and the statutes it replaced, and we have found nothing suggesting that H.B. 275 should be applied retroactively to alter the effect of *Bartley's* construction of §§ 537.600 and 537.610, RSMo 1978. Inasmuch as the claim sought to be asserted against the Commission by the third-party petition "accrued" on March 4, 1983, we need not consider what impact, if any, H.B. 275 had on *Bartley's* construction of §§ 537.600 and 537.610 when H.B. 275 took effect September 28, 1983.

■ For the same reasons that we earlier held that the 1983 Act did not compel a different result than the one in our opinion, we likewise hold that H.B. 275 compels no different result.

The final statute cited by counsel for respondent in the post-opinion motion is

H.C.S.S.B. 323, enacted at the First Regular Session of the Eighty-third General Assembly. That legislation ("the 1985 Act") became effective September 28, 1985, 29 days *after* our opinion was filed.

The 1985 Act repealed § 537.600, RSMo 1978,[16] and enacted in lieu thereof a new section carrying the same number. The new section contains everything that appeared in the repealed section and, in addition, some provisions that did not appear in the repealed section. The new section is set out marginally, the new provisions identified by italics.[17]

Counsel for respondent assert that the 1985 Act makes it "absolutely certain" that sovereign immunity is waived as to all injuries caused by a dangerous condition of a public entity's property, irrespective of whether the public entity is covered by liability insurance. Therefore, say counsel for respondent, if the 1985 Act applies retroactively to an accident that occurred March 4, 1983 (the date of the collision that caused the death of the plaintiffs' son), it is unnecessary for Lewis and National Oil to allege in their third-party petition that the Commission has liability insurance or a

---

**16.** Footnote 4, *supra.*

**17.** Section 537.600, as it appears in the 1985 Act, reads:

"1. Such sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977, except to the extent waived, abrogated or modified by statutes in effect prior to that date, shall remain in full force and effect; except that, the immunity of the public entity from liability and suit for compensatory damages for negligent acts or omissions is hereby expressly waived in the following instances:

(1) Injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles *or motorized vehicles* within the course of their employment;

(2) Injuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury directly resulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the danger-

ous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition. *In any action under this subdivision wherein a plaintiff alleges that he was damaged by the negligent, defective or dangerous design of a highway or road, which was designed and constructed prior to September 12, 1977, the public entity shall be entitled to a defense which shall be a complete bar to recovery whenever the public entity can prove by a preponderance of the evidence that the alleged negligent, defective, or dangerous design reasonably complied with highway and road design standards generally accepted at the time the road or highway was designed and constructed.*

*2. The express waiver of sovereign immunity in the instances specified in subdivisions (1) and (2) of subsection 1 of this section are absolute waivers of sovereign immunity in all cases within such situations whether or not the public entity was functioning in a governmental or proprietary capacity and whether or not the public entity is covered by a liability insurance for tort."*

self-insurance plan to indemnify it against a judgment for the plaintiffs or Lewis or National Oil. Consequently, according to counsel for respondent, the only issue this Court needs to decide is whether the 1985 Act applies retroactively to March 4, 1983.

Insisting that the General Assembly intended the 1985 Act to operate retroactively, counsel for respondent point to the segment of the 1985 Act providing that in an action based on the negligent, defective or dangerous design of a highway or road designed and constructed prior to September 12, 1977, the public entity has a defense whenever it can prove by a preponderance of the evidence that the alleged negligent, defective or dangerous design reasonably complied with highway and road design standards generally accepted at the time the road or highway was designed and constructed. For convenience, we henceforth refer to this defense as "the design standards defense."

Counsel for respondent remind us that September 12, 1977, was the date the Supreme Court of Missouri decided *Jones*, 557 S.W.2d 225, which, as noted earlier, abrogated the doctrine of sovereign immunity prospectively as to all tort claims arising on or after August 15, 1978. Counsel for respondent argue that the only logical reason for the General Assembly to provide the design standards defense in the 1985 Act is that the General Assembly intended to waive the State's sovereign immunity from and after September 12, 1977, as to all situations described in the 1985 Act, and the General Assembly correspondingly granted the State the design standards defense to "compensate" for the absence of sovereign immunity from and after September 12, 1977. Counsel for respondent maintain that if the 1985 Act is not retroactive, there would be no waiver of the Commission's sovereign immunity prior to September 28, 1985, and thus no need for the design standards defense before that date.

The argument, while superficially sound, is, upon closer examination, unconvincing.

 We must remember, as explained earlier, that statutes are generally presumed to operate prospectively unless the legislative intent that they be given retroactive operation clearly appears from the express language of the act or by necessary or unavoidable implication. *Department of Social Services*, 684 S.W.2d at 332[2]; *Lincoln Credit Co.*, 636 S.W.2d at 34[3]. There is, of course, no express language in the 1985 Act providing that it operate retroactively. Therefore, we must presume that it was intended to operate prospectively unless the contrary clearly appears by necessary or unavoidable implication. For the reasons that follow, we find no such implication.

After *Jones*, the first legislative action by the General Assembly regarding sovereign immunity was the 1978 Act, which restored sovereign immunity as it had existed prior to September 12, 1977 (the date of *Jones*), subject to the limited exceptions specifically carved out in the 1978 Act. Nothing in the 1978 Act provided that the exceptions therein were to apply retroactively to September 12, 1977, and it was squarely held in *Christophel v. Parkway School District*, 600 S.W.2d 61, 62[3] (Mo. App.1980), that a school district was immune from liability and suit for personal injuries allegedly sustained on its premises on February 20, 1978, a date after *Jones* but prior to the effective date of the 1978 Act. In reaching that result, *Christophel* noted the language in *Jones*, 557 S.W.2d at 231, which made the abrogation of sovereign immunity there prospective "[i]n order that an orderly transition be made, that adequate financial planning take place, that governmental units have time to adjust their practices and that the legislature be afforded an opportunity to consider the subject in general...." *Christophel*, 600 S.W.2d at 62.

Were we to accept the argument of counsel for respondent, we would be holding that the General Assembly, in enacting the 1985 Act, intended to waive sovereign immunity (in the instances therein specified) —insurance or not—retroactively to September 12, 1977, even though the General Assembly, in the 1978 Act, did not make the exceptions to sovereign immunity in that Act retroactive to September 12, 1977.

898 ■

If the General Assembly, in 1978, did not intend to make the exceptions to sovereign immunity in the 1978 Act retroactive to September 12, 1977, we fail to see how it can be unavoidably implied in the 1985 Act —7 years after the 1978 Act—that the General Assembly intended to make the exceptions to sovereign immunity in the 1985 Act retroactive to September 12, 1977, a date more than 8 years prior to the effective date of the 1985 Act. To apply the 1985 Act retroactively would offend the policy expressed in *Jones* that any change in sovereign immunity should be prospective so that an orderly transition can be made, adequate financial planning can take place, and governmental units can have time to adjust their practices.

Moreover, applying the 1985 Act retroactively to September 12, 1977, as urged by counsel for respondent, would result in public entities such as the school district in *Christophel* being retroactively stripped of the defense of sovereign immunity in regard to claims like the one in that case (which occurred after *Jones* but before the effective date of the 1978 Act), a bizarre denouement inasmuch as the 5-year statute of limitations, § 516.120(4), RSMo 1978, applicable to such actions, *Farwig v. City of St. Louis*, 499 S.W.2d 388, 389 (Mo.1973); *Farthing v. Sams*, 296 Mo. 442, 247 S.W. 111 (1922), would have already run—unless tolled—before the 1985 Act became law.

Embracing the position advocated by counsel for respondent would also mean that public entities such as the Commission, which understood the 1978 Act to say that sovereign immunity was waived only in the two situations expressly provided in subsections "(1)" and "(2)" of § 537.600, RSMo 1978, and, even in those two instances, only to the extent that the public entity had liability insurance or a self-insurance plan for such purposes (the interpretation reached in *Bartley* in 1983), and which consequently elected not to provide liability insurance or adopt a self-insurance plan, would, as of September 28, 1985, be retroactively exposed to liability for any uninsured claim on which the statute of limitations had not run.

We cannot reasonably infer that the General Assembly intended to create such havoc. Bearing in mind that the 1985 Act was passed at the legislative session that ended June 30, 1985, and that it took effect, as noted earlier, on September 28, 1985, we believe the more logical assumption is that the General Assembly intended the 1985 Act to operate only prospectively, thereby affording the State and its departments and agencies the interval between the passage of the Act and its effective date to prepare for the changes occasioned by the Act before it became law. Accordingly, we reject the contention of counsel for respondent that the General Assembly meant the 1985 Act to apply retroactively. That makes it unnecessary to consider the constitutional implications (Mo. Const. art. I, § 13 (1945)) of retroactive application, and we forgo that task.

The motion for rehearing or, in the alternative, to transfer this case to the Supreme Court of Missouri, is denied.